```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA
```

CHARLA MICHELLE GAGNON,         )
                                )
            Plaintiff,          )
                                )
v.                              )   Case No. CIV-13-520-RAW-KEW
                                )
CAROLYN W. COLVIN, Acting       )
Commissioner of Social          )
Security Administration,        )
                                )
            Defendant.          )

## REPORT AND RECOMMENDATION

Plaintiff Charla Michelle Gagnon (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on February 18, 1981 and was 31 years old at the time of the ALJ's decision. Claimant completed her high school education and some college. Claimant has worked in the past as a secretary, sales clerk, licensed practical nurse, and waitress.

Claimant alleges an inability to work beginning June 1, 2008 due to limitations resulting from lumbar degenerative disc disease, esophagitis, hiatal hernia, and migraine headaches.

## Procedural History

On August 30, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act.  Claimant's applications were denied initially and upon reconsideration.  An administrative hearing was conducted by Administrative Law Judge W. Howard O'Bryan ("ALJ") on July 16, 2012 in Ardmore, Oklahoma.  The ALJ issued an unfavorable decision on July 27, 2012.  On September 24, 2013, the Appeals Council denied review.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He determined that while Claimant suffered from severe impairments, she retained the RFC to perform sedentary work with restrictions.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to discuss uncontroverted and significantly probative medical evidence; and (2) refusing to consider a closed period of disability.

**Consideration of Significantly Probative Medical Evidence**

In his decision, the ALJ determined Claimant suffered from the severe impairments of digestive disorders status post stomach surgeries, degenerative disc disease of the lumbar spine, and reflux disease. (Tr. 21). He concluded that Claimant retained the RFC to perform sedentary work. In so doing, the ALJ determined Claimant could lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk for at least 2 hours in an 8 hour workday, sit for a total of about 6 hours in an 8 hour workday, push and/or pull unlimited other than as shown for lift/carry, and occasionally climb ramps/stairs/ladders/ropes/scaffolds, balance, stoop, kneel, crouch, and crawl. (Tr. 24). The ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform" although he did not specifically identify any such jobs in his decision. (Tr. 29). Based upon these findings, the ALJ concluded Claimant was not disabled. Id.

Claimant contends the ALJ failed to consider certain significantly probative medical evidence. Specifically, Claimant

states the ALJ failed to consider the report of Dr. Shon Cook in the form of a letter to Dr. Bobby Ellis concerning Claimant's prognosis following lumbar spine surgery. The correspondence at issue is dated February 8, 2010 acknowledges that Claimant presented to Dr. Cook for a neurosurgical consultation complaining of severe pain in her lower back, worse on the right, and down both legs to her feet. Although Claimant had experienced the pain for at least 5 years, she stated that it was debilitating over the past 6 months. The pain was reportedly constant. Standing, laying down, getting up and down, and any movement made the back pain worse. Claimant rated the pain as 10 out of 10. She told Dr. Cook that both legs and her right side were weak, but she could not specify an particular muscle group. She experienced no incontinence. She had been seeing a chiropractor and had epidural steroid injections in the past 6 months. Claimant had been wearing a brace for a few months which helped initially but was helping less and less. (Tr. 294).

A lumbar spine MRI revealed severe L4-L5 and L5-S1 disc degeneration, with loss of disc height and chronic bony remodeling. The central canal and foramina were patent at every level, but at L5-S1, a "huge" right/central disc extrusion took up most of the canal and extended several millimeters cranially and caudally. Dr.

Cook found profound nerve root impingement. (Tr. 295).

Dr. Cook stated Claimant presented with "classic mechanical back pain and radiculopathy" from one or two severely degenerated discs and severe radiculopathy from profound nerve root compression by a huge L5-S1 disc extrusion occupying nearly the entire central rood canal. She was considered by Dr. Cook to be a perfect surgical candidate with decompression of the nerve roots causing the radiculopathy and stabilization of the incompetent discs causing the back pain anticipated to alleviate Claimant's pain. Dr. Cook predicted a long road ahead of Claimant due to her "incredibly high" narcotic tolerance causing it to be "incredibly difficult" to control Claimant's pain after surgery. He stated Claimant would take several months to detox from the narcotics after surgery and she would have to endure repeated withdrawal episodes over several months until she was off of the narcotics. Additionally, Claimant's core muscles had atrophied due to inactivity and it would take several months of physical therapy, exercise, and core strengthening to rebuild muscle mass and core support Claimant lost. Claimant would fatigue very easily and still have a lot of back pain. Since Claimant's nerves have been smashed for so long, Dr. Cook predicted they would take a very long time to recover, that

they may never fully recover, and Claimant will experience rebound leg pain after surgery as nerves become functional again. He also stated there may be permanent damage to nerves such that the surgery will not alleviate all of Claimant's symptoms. (Tr. 296).

Claimant contends the ALJ should have discussed and considered these additional findings by Dr. Cook. Certainly, it is well-recognized in this Circuit that an ALJ is not required to discuss every piece of evidence. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, he is required to discuss uncontroverted evidence not relied upon and significantly probative evidence that is rejected. Id. at 1010. An ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). The ALJ's only reference to Dr. Cook's letter was a statement that "treatment records from Dr. Cook do indicate that she would have leg pain after surgery and nerves would become functional." (Tr. 27). This somewhat truncated summary of Dr. Cook's opinion is inadequate since it omits all references to the permanent effect Claimant's condition would cause. On remand, the ALJ shall consider the totality of Dr. Cook's opinion and provide specific and legitimate reasons for

accepting or rejecting his conclusions.

**Consideration of Closed Period of Disability**

Claimant contends she demonstrated substantial evidence for the closed period from April of 2009 through at least late 2010. Claimant asserts Dr. Cook's letter of February 8, 2010 together with medical testing evidence from this time period establishes Claimant was suffering from disabling pain and could not have performed even at a sedentary work level. Clearly, Claimant suffered from severe pain due to the lumbar spinal condition identified in Dr. Cook's letter. The ALJ did not consider a closed period of disability despite recognizing that as late a October of 2010, Claimant displayed significantly diminished lumbar mobility, positive bilateral straight leg raise testing, bilateral foot weakness, lumbar tenderness and muscle spasms, an inability to walk on her heels and toes, and an slow gait with a risk of falling. (Tr. 23-24, 395-96, 399).

In a closed period case, the ALJ determines that a claimant was disabled for a specific period of time which both started and stopped prior to the date of the ALJ's decision. See Pickett v. Bowen, 833 F.2d 288, 289 n. 1 (11th Cir. 1987). In deciding when to end a closed period of disability, the ALJ must identify specific

medical evidence, which leads him to conclude the claimant can perform substantial gainful activity. See <u>Burress v. Apfel</u>, 141 F.3d 875, 880 (8th Cir. 1998)("objective medical evidence" must show "discrete improvement" in claimant's condition to support choice of closed period date). On remand, the ALJ shall specifically examine the medical evidence and the effect upon Claimant's functional ability and then determine whether an award for closed period disability is warranted.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 3rd day of March, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE